UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

                  Plaintiff,

                                        **COMPLAINT**

     v.

PRECISION CONSULTING, INC. and          Case No.
  WAYNE GLADNEY,

                  Defendants.
---------------------------------------------------------x

The United States of America, by its attorney, RICHARD P. DONOGHUE, United States

Attorney for the Eastern District of New York, by the authority of the Attorney General, on

behalf of the United States Environmental Protection Agency ("EPA"), for its complaint against

Defendants Precision Consulting Inc. ("Precision") and its principal, Wayne Gladney

("Gladney") (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1.      The United States brings this action for injunctive relief and other relief against

Defendants, a corporation and its principal, who have repeatedly violated laws and regulations

designed to protect the public from lead poisoning during the performance of lead abatements

and renovations in older residential buildings.

2.      Lead poisoning – particularly in children – can lead to severe health problems.

Particularly large quantities of lead can be released during renovations of older residential

buildings, *i.e.*, those constructed before 1978, when lead-based paint was widely used.  In 1992,

to protect the public health, Congress enacted Title IV of the Toxic Substances Control Act

("TSCA").  Subsequently, EPA promulgated regulations regarding activities related to lead-

based paint, which are codified at 40 C.F.R. Part 745, Subpart L (the "Abatement Rule") and 40 C.F.R. Part 745, Subpart E (the "Renovation, Repair, and Painting Rule" or "RRP Rule").

3.      Defendants have, since 2012, violated TSCA, the Abatement Rule, and the RRP Rule by failing to:

       a.      Notify EPA before commencing lead-based paint abatements;

       b.      Obtain certification from EPA before commencing a renovation;

       c.      Have an EPA-certified supervisor on site during Defendants' abatements;

       d.      Ensure that abatements are conducted by certified abatement workers;

       e.      Develop written occupant protection plans; and

       f.      Follow post-abatement clearance procedures.

4.      As a result of Defendants' violations, the public was put at risk of exposure to lead-based paint hazards during the course of Defendants' abatement and renovation work.

5.      Moreover, Defendants continued to disregard TSCA and the Abatement Rule even after EPA served Defendants with an administrative complaint in January 2015 addressing Defendants' abatement work.

6.      The United States brings this action for an order enjoining Defendants from conducting further abatement and/or renovation work until they demonstrate compliance with TSCA, the Abatement Rule, and the RRP Rule, and a permanent injunction compelling Defendants to comply with TSCA, the Abatement Rule and the RRP Rule in the future.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345; Section 17 of the TSCA, 15 U.S.C. § 2616; and over the parties to this action.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and 1395(a), because this lawsuit primarily involves actions that took place in the Eastern District of New York.  To the extent that certain violations occurred outside of this District, such violations are properly asserted in this proceeding under the pendent venue doctrine.

## THE PARTIES

9.      Plaintiff is the United States of America on behalf of EPA.

10.     Defendant Precision Consulting, Inc. ("Precision") is a New York corporation.  It was incorporated in 2003 and was dissolved by proclamation/annulment of authority on or around January 27, 2010.

11.     Precision's principal place of business is 2121 Hillside Avenue, New Hyde Park, New York, 11040.

12.     Defendant Gladney resides at 9520 222nd Street, Apt. 1J, Queens Village, New York, 11429.

13.     Gladney is the owner of Precision.

14.     Precision has performed abatements that are subject to the Abatement Rule and at least one renovation that is subject to the RRP Rule in this District.

15.     Gladney has performed abatements that are subject to the Abatement Rule and at least one renovation that is subject to the RRP Rule in this District.

16.     Both Precision and Gladney are "person[s]" performing abatements, as defined in 40 C.F.R. § 745.223, and both are "firm[s]" and/or "person[s]" performing renovations, as defined in 40 C.F.R. § 745.83.

17.     Defendants continue to perform abatements and host websites promoting their abatement business in which they represent that they have expertise in compliance with laws and regulations related to abatement.

## STATUTORY AND REGULATORY BACKGROUND

18.     Lead is toxic.  *See* Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4851.  Ingestion even in small quantities can cause serious health problems, including hypertension, kidney failure, and infertility.  *Id*.  Children six years old and younger are most vulnerable to the harmful effects of lead.  *Id*.  Even "at low levels, lead poisoning in children causes intelligence quotient deficiencies, reading and learning disabilities, impaired hearing, reduced attention span, hyperactivity, and behavior problems."  *Id*.

19.     In 1992, Congress enacted the Residential Lead-Based Paint Hazard Reduction Act of 1992, "to encourage effective action to prevent childhood lead poisoning by establishing a workable framework for lead-based paint hazard evaluation and reduction;" "to ensure that the existence of lead-based paint hazards are taken into account in the … renovation of homes and apartments;" and "to educate the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards."  42 U.S.C. § 4851a.  The Act amended TSCA by adding a new Title IV, entitled "Lead Exposure Reduction," 15 U.S.C. §§ 2681 et seq.

20.     Section 402(a) of TSCA, 15 U.S.C. § 2682(a), requires EPA to promulgate regulations governing lead-based paint activities to ensure that individuals engaged in such activities are properly trained; that training programs are accredited; and that contractors engaged in such activities are certified.

21.     In 1996, in accordance with Section 402(a) of TSCA, EPA promulgated the Abatement Rule.

22.     The Abatement Rule is intended to protect workers, home owners, tenants and other members of the public during abatements of, *i.e.*, removal or elimination of, lead-based paint hazards in residential dwellings.  40 C.F.R. § 745.223(3)(i)-(iv).

23.     The Abatement Rule requires, among other things, that:

a.      Abatement firms performing abatements of pre-1978 housing must notify EPA of their activities at least five full business days before those activities commence.  40 C.F.R. § 745.227(e)(4).

b.      All covered abatements must be conducted only by individuals certified by EPA and supervised by an EPA-certified supervisor.  40 C.F.R. §§ 745.227(e)(1) and (2).

c.      Abatement firms must ensure that an EPA-certified supervisor be on-site during all work site preparation and during the post-abatement cleanup of work areas, as well as either onsite or available by telephone, pager or answering service and able to be present at the work site in no more than two hours of being contacted at all other times when abatement activities are being conducted.  40 C.F.R. § 745.227(e)(2).

d.      That an EPA-certified supervisor or project designer develop a written occupant protection plan for all abatements, that includes measures and management procedures that will be taken during the abatement to protect the building occupants from exposure to any lead-based paint hazards. 40 C.F.R. § 745.227(e)(5).

e.      Following an abatement, an EPA-certified inspector or risk assessor must conduct a visual inspection to determine if deteriorated paint surfaces and/or visible amounts of dust, debris or residue are still present, and if any such conditions exist, ensure that an EPA-certified abatement worker eliminate them before continuation of clearance procedures.  40 C.F.R. § 745.227(e)(8)(i).

f.      Following a visual inspection and post-abatement cleanup, an EPA-certified inspector or risk assessor must conduct clearance sampling, by employing single-surface sampling or composite sampling techniques. 40 C.F.R. § 745.227(e)(8)(ii).

g.      Following an abatement, an EPA-certified supervisor or project designer must prepare an abatement report that includes start and completion times

of abatement; the name and address of each certified firm conducting the abatement and the name of each supervisor assigned to the abatement project; the occupant protection plan, the name, address and signature of each certified risk assessor or inspector conducting clearance sampling and the date of clearance testing; the results of clearance testing and all soil analyses and the name of the recognized laboratory that conducted the analyses; and a detailed written description of the abatement, including abatement methods used, locations of rooms where abatement occurred, the reason for selecting particular abatement methods and any suggested monitoring of encapsulants or enclosures.  40 C.F.R. §§ 745.227(e)(1)(i)-(vi).

24.     Section 402(c) of TSCA, 15 U.S.C. § 2682(c), requires EPA to promulgate guidelines for the conduct of renovation and remodeling activities in buildings constructed before 1978 in order to reduce the risk of exposure to lead in connection with such activities.

25.     In 2008, in accordance with Section 402(c) of TSCA, EPA promulgated the RRP Rule.  The RRP Rule establishes training and certification requirements for renovation companies, mandates work-practice standards for regulated renovations in target housing, and requires notification to owners and occupants of most target housing so that they understand the risks of lead exposure before renovations begin.

26.     The RRP Rule requires, among other things, that renovation firms obtain EPA certification before commencing any lead-based paint renovation.  40 C.F.R. § 745.81(a)(2)(ii).

27.     The failure or refusal to comply with the Abatement Rule and/or the RRP Rule is unlawful and is a violation of Section 409 of TSCA, 15 U.S.C. § 2689.

28.     Section 17(a) of TSCA, 15 U.S.C. § 2616(a), provides federal district courts with jurisdiction to restrain any violation of Section 409 of TSCA, 15 U.S.C. § 2689.

## DEFENDANTS' VIOLATIONS OF
## TSCA AND THE ABATEMENT AND RRP RULES

### Defendants' Certifications

29.     Precision is an EPA-certified abatement firm, whose abatement certification was issued on November 13, 2017 and is set to expire on December 30, 2020.

30.     Precision is not, and has never been, an EPA-certified renovation firm.

31.     Gladney is not an EPA-certified abatement worker, or an EPA-certified abatement supervisor.

32.     Gladney was an EPA-certified renovator as of August 12, 2010, but his certification expired on or before August 12, 2016.

### Violations at 612 Onderdonk Avenue and EPA's Administrative Complaint

33.     In or around January of 2012, the New York City the Department of Health and Mental Hygiene ("Department of Health") learned that a child residing at 612 Onderdonk Avenue, Apartment 1L, in Ridgewood, Queens ("612 Onderdonk Avenue") had an elevated blood lead level.

34.     This prompted the Department of Health to investigate the cause of the child's elevated blood lead level and, subsequently, to order the owner or managing agent (hereinafter, the "managing agent") of this property to perform a lead-based paint abatement.

35.     The managing agent of 612 Onderdonk Avenue contracted with Defendants to perform the work ordered by the Department of Health.

36.     Defendants did not notify EPA before commencing the abatement at this property.

37.     Defendants did not have an EPA-certified supervisor on-site or available during the abatement at this property.

38.     In March 2012, the tenant occupying 612 Onderdonk Avenue sent a complaint to EPA alleging that Defendants were not using lead-safe work practices and were causing a lead dust hazard in the apartment.

39.     On March 7, 2012, EPA inspected the 612 Onderdonk Avenue property.  EPA's inspector encountered Gladney and, despite some evidence of attempted containment, observed that there was construction dust on surfaces inside the property.

40.     On May 15, 2013, EPA notified Defendants of their violations of TSCA regulations.

41.     On January 8, 2015, EPA issued a "Complaint and Notice of Opportunity for Hearing" ("Administrative Complaint") for Defendants' violation of 40 C.F.R. § 745.227(e)(4)(i-v).

42.     The Administrative Complaint sought a $15,300 penalty and required that Defendants file an answer within 30 days of their receipt of the Administrative Complaint.

43.     On or around September 3, 2015, after multiple unsuccessful attempts, the EPA effectuated service on Gladney by affixing the Administrative Complaint to his door.

44.     Furthermore, on April 23, 2018, a representative of EPA hand-delivered Gladney the Administrative Complaint.

45.     Defendants did not respond to the Administrative Complaint.

**Defendants' Violations at 211 Van Buren Street**

46.     211 Van Buren Street, Brooklyn, New York ("211 Van Buren Street") is a residential building built in or around 1899.

47.     On March 17, 2017, the Department of Health conducted a lead poisoning investigation for a child residing at 211 Van Buren Street with an elevated blood lead level.

48.     As part of its investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

49.     On March 23, 2017, the Department of Health ordered the managing agent to remove or abate the lead based paint.

50.     The managing agent of this property contracted with Defendants to perform the abatement work and notified the Department of Health that the work would commence on April 16, 2017 and end on April 20, 2017.

51.     Defendants did not notify EPA before commencing abatement activities on this property.

52.     Defendants did not have an EPA-certified supervisor on-site during the abatement at this property.

53.     Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

### Violations at 135-19 Brookville Boulevard

54.     135-19 Brookville Boulevard, Queens, New York ("135-19 Brookville Boulevard") is a residential building built in or around 1925.

55.     On May 24, 2017, the Department of Health conducted a lead poisoning investigation for a child residing at this property who had an elevated blood lead level.

56.     During the investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

57.     On June 1, 2017, the Department of Health ordered the managing agent of this property to remove or abate the lead based paint.

58.     On June 8, 2017, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that the abatement would begin on June 9, 2017 and end on July 9, 2017, and identifying Defendants as the contractors performing the work.

59.     During a June 15, 2017 inspection, the Department of Health inspector observed that most of the lead paint violations remained uncorrected and that no work was underway.

60.     The inspector advised EPA that, following the commencement of work on or around June 9, 2017, a child who resided on the property had an elevated blood lead level that had risen during the conduct of the abatement.

61.     Defendants did not notify EPA before commencing the abatement at this property.

62.     Defendants did not have an EPA-certified supervisor on-site during the abatement at this property.

63.     Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

**Defendants' Violations at 89-27 168th Place**

64.     89-27 168th Place, Queens, New York ("89-27 168th Place") is a residential building built in or around 1920.

65.     On June 8, 2017, the Department of Health conducted a lead poisoning investigation for a child residing at this property who had an elevated blood lead level.

66.     During this investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

67.     On June 14, 2017, the Department of Health ordered the managing agent of the property to remove or abate the lead based paint.

68.     On June 21, 2017, the managing agent filed a notice of commencement of abatement with the Department of Health stating that the abatement would begin on June 23, 2017 and end on July 2, 2017 and identifying Defendants as the contractors performing the work.

69.     Defendants did not notify EPA before commencing the abatement at this property.

70.     Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

71.     Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

**Defendants' Violations at 48 Cortlandt Street**

72.     48 Cortlandt Street, Staten Island, New York ("48 Cortlandt Street") is a residential building built in or around 1915.

73.     On June 12, 2017, the Department of Health conducted a lead-poisoning investigation for a child residing at this property who had an elevated blood lead level.

74.     During this investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

75.     On June 19, 2017, the Department of Health ordered the managing agent of this property to remove or abate the lead-based paint.

76.     On June 21, 2017, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that abatement would begin on June 24, 2017 and end on June 29, 2017, and identifying Defendants as the contractors doing the work.

77.     On or about June 24, 2017, Defendants commenced the abatement.

78.     A follow-up inspection conducted on June 27, 2017 by the Department of Health revealed that Defendants had not completed the work and had not followed work practice standards, including failure to enclose a wall.

79.     Over the following nine months, the Department of Health conducted several follow up inspections and noted that Defendants had not completed the abatement.

80.     Due to Defendants' inaction, on April 4, 2018, the Department of Health ordered the New York City Department of Housing Preservation and Development ("Department of Housing Preservation") Emergency Repair Program to arrange for completion of the abatement that Defendants had failed to complete.

81.     Defendants did not notify EPA before commencing the abatement at this property.

82.     Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

83.     Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

84.     Defendants did not conduct any post-abatement clearance sampling at this property.

**Defendants' Violations at 1455 New York Avenue**

85.     1455 New York Avenue, Brooklyn, New York ("1455 New York Avenue") is a residential building built in or around 1920.

86.     On August 16, 2017, the Department of Health conducted a lead poisoning investigation for a child residing at 1455 New York Avenue who had an elevated blood lead level.

87.     During the investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

88.     On August 22, 2017, the Department of Health ordered the managing agent of the property to remove or abate the lead based paint.

89.     On September 25, 2017, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that the abatement would begin on September 26, 2017, and end on October 15, 2017, and identifying Defendants as the contractors performing the work.

90.     On or about September 26, 2017, Defendants commenced the abatement.

91.     The Department of Health conducted follow up inspections through November 2017 and determined that Defendants had not completed the abatement in a timely fashion and that dust and debris remained inside the living space of this property as late as November 8, 2017.

92.     The Department of Health issued a Summons to Precision for creating a lead dust nuisance and for failure to perform daily cleanup.

93.     On November 30, 2017, the Department of Health issued another Summons to Precision because hazardous materials with lead-based paint were left exposed in the rear of the apartment building and not properly sealed and contained.

94.     Defendants did not notify EPA before commencing the abatement at this property.

95.     Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

96.     Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

13

**Defendants' Violations at 111-36 204th Street**

97.     111-36 204th Street, Queens, New York ("111-36 204th Street") is a residential building built in 1925.

98.     On January 3, 2018, the Department of Health conducted a lead poisoning investigation for a child residing at this property who had an elevated blood lead level.

99.     During this investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

100.    On January 11, 2018, the Department of Health ordered the managing agent of the property to remove or abate the lead based paint.

101.    On January 16, 2018, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that abatement would begin on January 21, 2018 and end on January 25, 2018, and identifying Defendants as the contractors performing the abatement.

102.    Defendants did not notify EPA before commencing the abatement at this property.

103.    Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

104.    Gladney personally performed abatement work at this property despite the fact that he was not an EPA-certified abatement worker.

105.    Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

**Defendants' Violations at 147-53 Arlington Terrace**

106.    147-53 Arlington Terrace, Queens, New York ("147-53 Arlington Terrace") is a residential building built in 1925.

107.    On February 27, 2018, the Department of Health conducted a lead poisoning investigation for a child residing at this property who had an elevated blood lead level.

108.    During this inspection, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

109.    On March 7, 2018, the Department of Health ordered the managing agent of the property to remove or abate the lead based paint.

110.    On March 15, 2018, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that abatement would begin on March 16, 2018 and end on March 30, 2018, and identifying Defendants as the contractors performing the abatement.

111.    On or about March 16, 2018, Defendants commenced the abatement.

112.    On March 19, 2018, the Department of Health conducted a follow-up inspection of this property, at which time the inspector observed that many of the paint hazard conditions which prompted the Department of Health's order remained uncorrected, such as peeling paint and exposed dust.

113.    Defendants never completed the abatement.

114.    Defendants did not notify EPA before commencing the abatement at this property.

115.    Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

116.    Gladney personally performed abatement work at this property despite the fact that he was not an EPA-certified abatement worker.

117.    Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

15

118.    Defendants did not conduct any post-abatement clearance sampling at this property.

119.    On March 27, 2018, the managing agent filed a second notice of commencement of abatement indicating that a different company, L&L Lead Services, would complete the abatement.

### Defendants' Violations at 743 E. 136th Street

120.    743 E. 136th Street, Apt. 3E, Bronx, New York ("743 E. 136th Street") is a residential building built in 1915.

121.    In April 2018, the managing agent of this property hired Defendants to conduct a lead-based paint removal at the property in response to an order that the Department of Housing Preservation had issued.

122.    In May of 2018, the managing agent of this property notified EPA that Defendants had not done proper containment of the work area, thereby exposing tenants of the apartment and tenants elsewhere in the building to lead dust and debris during the abatement.

123.    Defendants did not notify EPA before commencing the abatement at this property.

124.    The managing agent of this property notified EPA that Gladney would not show up for work for days while in the process of performing the abatement.  Ultimately, the managing agent hired another company to complete the abatement.

125.    Defendants did not conduct any post-abatement clearance sampling at this property.

### Defendants' Violations at 817 West End Avenue

126.    817 West End Avenue, Apt. 11E, Manhattan, New York ("817 West End Avenue") is a residential building built in 1920.

127.    On March 31, 2019, the managing agent of an apartment at 817 West End Avenue hired Defendants to perform both renovation and abatement work in his unit for compensation.

128.    Defendants did not notify EPA before commencing the abatement at this property.

129.    Neither Gladney nor Precision was an EPA-certified renovation firm at the time of the renovation at this property.

130.    According to the managing agent of this apartment, Defendants "disappeared" without completing the abatement and, despite repeated requests, did not respond or take any further actions to finish the renovation and the abatement.

131.    Defendants did not conduct any post-abatement clearance sampling at this property.

**Defendants' Violations at 1776 Merrill Street**

132.    1776 Merrill Street, Bronx, New York ("1776 Merrill Street") is a residential building built in or around 1901.

133.    On June 13, 2017, the Department of Health conducted a lead poisoning investigation for a child residing at this property who had an elevated blood lead level.

134.    During the investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

135.    On June 21, 2017, the Department of Health ordered the managing agent of this property to remove or abate the lead based paint.

136.    On June 27, 2017, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that the abatement was to begin on July 2, 2017 and end on July 3, 2017, and identifying Defendants as the contractors performing the work.

137.    The Department of Health conducted follow-up inspections and issued a warning letter to the Managing Agent for failure to correct violations observed on August 23, 2017.

138.    As a result of an inspection on September 11, 2017, the Department of Health issued a Summons to the managing agent for the continuing failure to submit clearance dust wipe results three months from the Commissioner's Order to Abate.

139.    Defendants did not notify EPA before commencing the abatement at this property.

140.    Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

141.    Because Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement, Defendants could not have developed and therefore did not develop a written occupant protection plan pursuant to EPA's regulations.

### Defendants' Violations at 1563 Vyse Avenue

142.    1563 Vyse Avenue, Bronx, New York ("1563 Vyse Avenue") is a residential building built in or around 1901.

143.    On September 29, 2017, the Department of Health conducted a lead poisoning investigation for a child residing at this property who had an elevated blood lead level.

144.    During this investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

145.    On October 10, 2017, the Department of Health ordered the managing agent of the property to remove or abate the lead based paint.

146.    On October 18, 2017, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that abatement would begin on October 20,

2017 and end on October 27, 2017, and identifying Defendants as the contractors performing the abatement.

147.    On or about October 20, 2017, Defendants commenced the abatement.

148.    On October 24, 2017 and November 1, 2017, the Department of Health conducted follow-up inspections to verify compliance with the October 10, 2017 Order and observed that work was not in progress, but that construction material was present.

149.    Subsequent inspections conducted indicated that the abatement had started, but was incomplete.

150.    On December 12, 2017, the Department of Health ordered the Emergency Repair Program of the Department of Housing Preservation to complete the abatement at this property.

151.    Defendants did not notify EPA before commencing the abatement at this property.

152.    Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

153.    Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

154.    Defendants did not conduct any post-abatement clearance sampling at this property.

**Defendants' Violations at 671 Coney Island Avenue**

155.    671 Coney Island Avenue, Brooklyn, New York ("671 Coney Island Avenue") is a residential building built in or around 1899.

156.    On October 4, 2017, the Department of Health conducted a lead poisoning investigation for a child residing at this property who had an elevated blood lead level.

157.    During this investigation, the Department of Health documented the presence of lead-based paint that was peeling or otherwise accessible in the child's residence.

158.    On October 12, 2017, the Department of Health ordered the managing agent of the property to remove or abate the lead based paint.

159.    On October 22, 2017, the managing agent filed a notice of commencement of abatement with the Department of Health, stating that abatement would begin on October 23, 2017 and end on November 10, 2017, and identifying Defendants as the contractors performing the abatement.

160.    At a follow-up inspection on October 31, 2017, the inspector for the Department of Health asked the worker performing the abatement to show an EPA certification.  The worker could not produce the certification.

161.    This worker was not an EPA-certified abatement worker.

162.    At that time, the Department of Health ordered the work to stop and issued a Summons to Defendants on the basis that the worker was not licensed.

163.    Subsequent inspections revealed that Defendants never completed the abatement.

164.    Defendants did not notify EPA before commencing the abatement at this property.

165.    Defendants did not ensure that an EPA-certified supervisor was on-site during the abatement at this property.

166.    Defendants did not prepare, using an EPA-certified supervisor, a written occupant protection plan for this property.

167.    Defendants did not conduct any post-abatement clearance sampling at this property.

## FIRST CLAIM FOR RELIEF

### Violations of TSCA and the Abatement Rule
### Failure to Notify EPA Prior to Commencing a Lead-Based Paint Abatement
### 15 U.S.C. § 2689; 40 C.F.R. § 745.227(e)(4)

168.    Defendants failed to notify EPA before commencing the abatements at 211 Van

Buren Street; 135-19 Brookville Boulevard; 1776 Merrill Street; 89-27 168th Place; 48 Cortlandt

Street; 1455 New York Avenue; 1563 Vyse Avenue; 671 Coney Island Avenue; 111-36 204th

Street; 147-53 Arlington Terrace; 743 West 136th Street; 817 West End Avenue and 612

Onderdonk Avenue.

169.    Without judicial relief, Defendants will continue to violate TSCA and the

Abatement Rule.

170.    Defendants' abatement activities, including their violations of the Abatement

Rule's notification requirements, threaten irreparable harm to the health and safety of people

living in or near buildings where Defendants perform abatements, visitors to these buildings, and

to the workers involved in these renovations.

## SECOND CLAIM FOR RELIEF

### Violations of TSCA and the Abatement Rule
### Failure to have a Certified Supervisor On-Site or Available During the Abatement
### 15 U.S.C. § 2689; 40 C.F.R. § 745.227(e)(2)

171.    Defendants failed to have a certified supervisor assigned and available during the

abatements performed at 211 Van Buren Street; 135-19 Brookville Boulevard; 1776 Merrill

Street; 89-27 168th Place; 48 Cortlandt Street; 1455 New York Avenue; 1563 Vyse Avenue; 671

Coney Island Avenue; 111-36 204th Street; and 147-53 Arlington Terrace.

172.    The circumstances of Defendants' repeated violations, including that they

continued after EPA notified Defendants of the violation at 612 Onderdonk Avenue and issued

them a complaint based on those violations, demonstrate that, without judicial relief, Defendants will continue to violate TSCA and the Abatement Rule.

173.    Defendants' abatement activities, including their violations of the Abatement Rule's certification requirements, threaten irreparable harm to the health and safety of people living in or near buildings where Defendants perform abatement activities, visitors to these buildings, and to the untrained workers involved in the abatements.

### THIRD CLAIM FOR RELIEF

**Violations of TSCA and the Abatement Rule**
**Failure to Ensure Abatement is Conducted by a Certified Abatement Worker**
**15 U.S.C. § 2689; 40 C.F.R.  745.227(a)(2)**

174.    Defendants failed to ensure that their abatements were conducted by certified abatement workers at 111-36 204th Street; 147-53 Arlington Terrace and 671 Coney Island Avenue.

175.    The circumstances of Defendants' repeated violations, including that they continued after EPA had notified Defendants of violations at 612 Onderdonk Avenue and filed a complaint based on those violations, demonstrate that, without judicial relief, Defendants will continue to violate TSCA and the Abatement Rule.

176.    Defendants' abatement activities, including their violations of the Abatement Rule's certification requirements, threaten irreparable harm to the health and safety of people living in or near buildings where Defendants perform abatement activities, visitors to these buildings, and to the untrained workers involved in the abatements.

## FOURTH CLAIM FOR RELIEF

### Violations of TSCA and the Abatement Rule
### Failure to Develop a Written Occupant Protection Plan
### 15 U.S.C. § 2689; 40 C.F.R. § 745.227(e)(5)

177.    Defendants failed to develop written occupant protection plans in accordance with 40 C.F.R. § 745.227(e)(5) at the following residences: 211 Van Buren Street; 135-19 Brookville Boulevard; 1776 Merrill Street; 89-27 168th Place; 48 Cortlandt Street; 1455 New York Avenue; 1563 Vyse Avenue; 671 Coney Island Avenue; 111-36 204th Street; and 147-53 Arlington Terrace.

178.    The circumstances of Defendants' repeated violations, including that they continued after EPA had notified Defendants of violations at 612 Onderdonk Avenue and filed a complaint based on those violations, demonstrate that, without judicial relief, Defendants will continue to violate TSCA and the Abatement Rule.

179.    Defendants' abatement activities, including their violations of the Abatement Rule's safe work-practice requirements, threaten irreparable harm to the health and safety of people living in or near buildings where Defendants perform abatement activities, visitors to these buildings, and to the untrained workers involved in the abatements.

## FIFTH CLAIM FOR RELIEF

### Violations of TSCA and the Abatement Rule
### Failure to Follow Post-Abatement Clearance Procedures
### 15 U.S.C. § 2689; 40 C.F.R. §§ 745.227(e)(8)-(10)

180.    Defendants failed to follow post-abatement clearance procedures, in accordance with 40 C.F.R. §§ 745.227(e)(8)-(10) at the following residences: 743 E. 136th Street; 1776 Merrill Street; 48 Cortlandt Street; 1563 Vyse Avenue; 671 Coney Island Avenue; and 147-53 Arlington Terrace.

181.    The circumstances of Defendants' repeated violations, including that they continued after EPA had notified Defendants of violations at 612 Onderdonk Avenue and filed a Complaint based on those violations, demonstrate that, without judicial relief, Defendants will continue to violate TSCA and the Abatement Rule.

182.    Defendants' abatement activities, including their violations of the Abatement Rule's safe work-practice and quality control requirements, threaten irreparable harm to the health and safety of people living in or near buildings where Defendants perform abatement activities, visitors to these buildings, and to the untrained workers involved in the abatements.

### SIXTH CLAIM FOR RELIEF

**Violations of TSCA and RRP Rule**
**Failure to Obtain EPA Certification Prior to Commencing a Lead-Based Paint Renovation**
**15 U.S.C. § 2689; 40 C.F.R. § 745.81(a)(2)(ii)**

183.    Defendants failed to obtain EPA certification before commencing a lead-based paint renovation at 817 West End Avenue, pursuant to 40 C.F.R. § 745.81(a)(2)(ii).

184.    The circumstances of Defendants' violation, including that it occurred after EPA had notified Defendants of violations at 612 Onderdonk Avenue and filed a Complaint based on those violations, demonstrate that, without judicial relief, Defendants will continue to violate TSCA and the RRP Rule.

185.    Defendants' renovation activities, including their violations of the RRP Rule's certification requirements, threaten irreparable harm to the health and safety of people living in or near buildings where Defendants perform renovation activities, visitors to these buildings, and to the untrained workers involved in the renovations.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court:

i.      Enter judgment against Defendants and in favor of the United States for the violations alleged in this Complaint;

ii.     Enter an order restraining Defendants from performing any lead-abatement or renovation work until they can demonstrate compliance with TSCA, the Abatement Rule and the RRP Rule;

iii.    Enter a permanent injunction compelling Defendants to comply with TSCA, the Abatement Rule and the RRP Rule;

iv.     Provide for any and all other relief that this Court deems just and proper.

Dated: April 13, 2020
      Brooklyn, New York

Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

RICHARD P. DONOGHUE
United States Attorney for the
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York, 11201

By:     */s/ Shana C. Priore*
      SHANA C. PRIORE
      Assistant United States Attorney
      (718) 254-6008
      shana.c.priore@usdoj.gov

OF COUNSEL:

Stuart Keith, Esq.
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, New York 10007-1866